# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 10 C 50285 | DATE | 7/17/2012 |
| CASE TITLE | United States vs. Love | | |

**DOCKET ENTRY TEXT:**

Love's § 2255 motion [1] is granted. The parties are directed to set this case for a status hearing to schedule a resentencing hearing. Love need not be present for the status hearing.

■[ For further details see text below.]

Docketing to mail notices.

---

After a jury trial, Quentin Love was convicted of possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). He is currently serving a 120-month sentence. The Seventh Circuit dismissed Love's direct appeal after his counsel moved to withdraw because there were no nonfrivolous arguments for appeal. United States v. Love, 350 F. App'x 70 (7th Cir. 2009). Love then filed a motion pursuant to 28 U.S.C. § 2255 claiming that he received ineffective assistance of counsel during pre-trial plea negotiations when his attorney failed to sufficiently investigate his criminal history to determine that he did not qualify for the statutory sentencing enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), contained in the proposed plea agreement.[1]

On June 27, 2011, this court entered an order finding that Love's attorney's performance was deficient and that resolution of the prejudice prong of Love's claim would require an evidentiary hearing. The evidentiary hearing was held on September 21, 2011, and the court ordered post-hearing briefing. Thereafter, the court stayed these proceedings pending the United States Supreme Court's decision in Lafler v. Cooper, 132 S. Ct. 1376 (2012), where the Supreme Court was asked to hold that a subsequent fair trial precludes any possible claim relating to ineffective assistance of counsel at the plea bargaining stage. In entering the stay, this court recognized that if the Supreme Court so held, Love's ineffective assistance of counsel claim would fail. The Supreme Court, however, did not so hold but, rather, reaffirmed that criminal defendants are entitled to the effective assistance of counsel when presented with a plea offer and rejected the argument that a later fair trial wipes clean any deficient performance during plea bargaining. Id. at 1388.

For the reasons that follow, the court now concludes that Love was prejudiced by his attorney's failure to recognize that Love did not qualify for the ACCA sentencing enhancement at the time he was presented with a plea agreement so indicating. Therefore, Love's § 2255 petition is granted and he will be resentenced.

## I. BACKGROUND

After this court heard and denied Love's motion to suppress, a jury trial was scheduled for May 2008. Love then filed a motion for substitution of counsel which this court heard and denied on April 11, 2008. At that hearing, Love raised a number of complaints about his attorney including his attorney's failure to properly

calculate the sentencing guidelines range which Love explained made him hesitant to accept a plea agreement:

> DEFENDANT LOVE: . . . I had one where it state that as far as my points and stuff like that that I wouldn't mind taking the plea agreement, but my points system is not right. I know it's not right. He was trying to tell me that I was getting three points for a case, which I was only supposed to get one case for. So, if he trying to steer me wrong on that, I know he's going to steer me wrong on my case.
>
> THE COURT: Okay. You have some dispute regarding the guidelines calculations. Is that what you're saying?
>
> DEFENDANT LOVE: Yes.
>
> THE COURT: Well, the guidelines calculations is going to be what it is independent of what [defense counsel] tells you.
>
> DEFENDANT LOVE: Yeah, but if he's telling me that it's more and it's less and I plead out to this class, a level six, and I'm a level five or four, then I done pled out to more time than what I supposed to plead to.
>
> THE COURT: Okay. But what I'm telling you is [defense counsel] doesn't decide what the guidelines calculations are. The probation department prepares a report. I look at it. If you have a dispute with what they say, you give that dispute to me, and I resolve it, but its my decision as to what the guidelines are. Regardless of what [defense counsel] tells you or what the U.S. Attorney believes the guidelines should be, that's my call.
>
> DEFENDANT LOVE: Okay. Well, if it's like that, I will say in open court I'm ready to plead.

Thereafter, at Love's request, the matter was scheduled for change of plea hearing on April 17, 2008.

On April 17, 2008, the parties informed the court that plea negotiations had broken down, that Love would not be pleading guilty, and that Love had filed another motion for a new attorney. In response to the court's questions about the grounds for his motion, Love informed the court that he had initially decided to plead guilty when he was told by his attorney that his sentence would be 6 ½ to 8 years (77 to 96 months), but when he received the written plea agreement, which contemplated a much higher ACCA sentence, he changed his mind because he did not believe that he was an armed career criminal. Love's attorney informed the court that he originally determined that Love did not qualify for the ACCA statutory sentencing enhancement, but that he subsequently determined that Love qualified. Specifically, Love's attorney said that "[b]ased on the government's review of his criminal history, they have him as qualifying as an armed career criminal. My reading of Mr. Love's criminal history also says that he does have the prior convictions that qualify him as armed career." At that point, Love insisted that he did not qualify and the court informed him that:

> What the parties agree to as far as your prior record or how that has an effect on your sentence is not the decision that they make. It's the decision that I make. And so, whatever the government proposes to you, whatever you agree to or disagree to doesn't bind me, and if we went through a plea, I would explain that to you, that it's up to me to look at your record, it's up to me to look at your prior history and to decide on what you qualify for and what you don't qualify for. Even if you all agreed that you were a career offender or — what was the other? . . . armed career criminal, it's up to me to decide that, and if you said you were and I decided you weren't, then I wouldn't sentence you as an armed career criminal. If you decided you weren't and I decided you were, then I would sentence you [as an armed career criminal].
>
> My point is that there's a lot of things in that plea agreement that do make a difference, but there are some things in that plea agreement that don't bind me, and it's my decision to make.

Thereafter, this court denied Love's motion to substitute counsel and indicated that the matter would proceed to trial in May as scheduled. On the first day of trial, Love submitted another motion for new counsel which the court denied.

After a three-day trial, the jury found Love guilty. The matter was scheduled for sentencing, and the court ordered the preparation of a presentence investigation report. Love's attorney filed a written objection to the conclusion in the presentence investigation report that Love was subject to the ACCA 15-year mandatory minimum sentence, see 18 U.S.C. § 924(e)(1),[2] because he was previously convicted of at least three serious drug offenses. Love's attorney contended that Love had only two qualifying prior convictions not three.[3] In response, the government maintained that Love should be sentenced under the ACCA.

Thereafter, in a supplemental presentence report, the probation officer changed her position, asserted that Love did not qualify for the ACCA enhancement, and recalculated the guidelines to a range of 100 to 125 months. Specifically, the probation officer concluded that the conviction in Winnebago County case No. 97 CF 2337 was a class 2 felony for which the maximum term of imprisonment was 7 years, and that the offense did not therefore meet the definition of "serious drug offense" because the maximum term of imprisonment was not ten years or more. See 18 U.S.C. § 924(e)(2)(A)(ii).

At the sentencing hearing, the government and Love's attorney agreed that the amended guidelines calculations were correct. Love reiterated that he would have pleaded guilty if the plea agreement presented to him had not contemplated an ACCA sentence with a 15-year mandatory minimum sentence. At that point, the court reviewed a copy of the contemplated plea agreement, which was admitted as an exhibit. The plea agreement noted that the parties agreed that Love must be sentenced as an armed career criminal based on three convictions including the conviction entered in case No. 97 CF 2337. The plea agreement provided that this conviction was for possession with intent to deliver more than one gram but less than 15 grams of cocaine, a class 1 felony under Illinois law, 720 ILCS 570/401(c)(2), with a maximum term of imprisonment in excess of ten years, 730 ILCS 5/5-4.5-30(a). Actually, the conviction was for possession of less than one gram of a substance containing cocaine, which is a class 2 felony under Illinois law, 720 ILCS 570/401(d), and has a maximum term of imprisonment of seven years, 730 ILCS 5/5-4.5-35(a). Thereafter, the court pointed out that the plea agreement specifically stated that guideline calculations were preliminary in nature and then the following exchange between the court and Love ensued:

> THE COURT: And it's up to me to sentence, and I am not bound by any guideline calculations or recommendations by the attorneys. You understood all that.
>
> THE DEFENDANT: Yes, Yes. But I also knew that if I sign a plea agreement, I know - - I don't know nothing about federal, but I know in the state when you sign a plea agreement, that's, you know - - I don't know - - you say you could sentence me to more or you could sentence me to less. So, by me agreeing to a plea agreement, you could sentence me to the 14, or you could sentence me to the19 or in between there. I didn't know like an open plea - -
>
> . . . .
>
> THE COURT: But you knew that I wasn't bound by the recommendations of the parties or I wasn't bound by their guidelines calculations. You knew that much.
>
> THE DEFENDANT: I didn't know it in that sense, between the six and the eight. I didn't know it in that sense. But with the plea agreement stating that I was armed career, I figured that you couldn't go below 15, but I can get 15 to life. And with 15 being the less that I can get in the plea agreement if I take it, it's like to me, personally, suicide.

The court rejected Love's argument that he should receive the acceptance of responsibility downward adjustment because he would have pleaded guilty had he been presented with a plea agreement that did not contemplate ACCA sentencing. The court sentenced Love within the advisory guidelines range to 120 months, the statutory

maximum for the offense.

At the evidentiary hearing on defendant's § 2255 motion, Love's trial attorney testified that he advised Love regarding the possible penalties he faced both verbally and in a letter. This advice included whether Love would qualify for ACCA sentencing. Defense counsel specifically discussed with Love the prospect of entering the proposed plea agreement tendered by the government. Defense counsel said that Love maintained that he did not qualify for ACCA sentencing. When asked what Love said about his willingness to plead without the ACCA enhancement, defense counsel said, "I'm not recalling a specific conversation that I had with him, but he likely expressed that he would take a plea if it wasn't an armed career criminal enhancement." Defense counsel testified that Love had always maintained his innocence from the first moment he spoke to him through the sentencing hearing.

A copy of the proposed plea agreement that Love rejected was admitted as an exhibit at the hearing and provides that "the parties agree on the following points: . . . [p]ursuant to Title 18, United States Code, Section 924(e), and Guideline Section 4B1.4, defendant must be sentenced as an Armed Career Criminal." The proposed plea agreement also contemplated that Love would receive a three-level reduction for his acceptance of responsibility.

United States Probation Officer Jennifer Taborski testified that she prepared the presentence investigation report for the court in Love's criminal case. Taborski said that during her investigation she did not uncover anything indicating that defendant would not have received the acceptance of responsibility reductions had he pleaded guilty prior to trial. Taborski also indicated that her answer would change if Love made statements to her denying that he committed the crime.

Pameka L. Wilson, Love's fiancée. testified that before Love went to trial he told her that he would plead guilty if the sentencing range was 6 to 8 years, "[b]ut he was going to go to trial if they were going to try to charge him with habitual criminal because he was not qualified for that." Love told her that "Mr. Omar told him that the six to eight was no longer there. He was a habitual criminal." Wilson testified further that Love said, "he would rather go to trial than to take the habitual criminal that he was not qualified for."

Love testified that in January 2008, his attorney told him that he was facing armed career statutes and that the penalty was 14 to 19 years. Before court on April 11, 2008, Love told his attorney that he would plead guilty if the range was 6 to 8 years. When Love appeared in court that day he told the Judge that he wanted to plead guilty and a date was scheduled for him to do so. Approximately 2 days later, Love received a written plea agreement for 15 to 19 years. Love said that when he appeared in court on April 17, 2008, he did not plead guilty because it was a different plea agreement. Love testified that based on his experience in state court, "when I take a plea agreement between me and the government, I would think that the judge will accept that plea agreement. I never experienced a judge going over or under I guess they say a binding plea agreement." Love said that he would have pleaded guilty on April 17, 2008, if the agreement had said six to eight years. Love elaborated stating, "[s]ix to eight, I would still get out young. Fifteen to 19 is, you know, a tough pill to swallow."

On cross-examination, Love was asked if he was innocent of possessing a gun on September 19, 2007 and he said, "[i]f I'm speaking open and if somebody else was in the car that took off running and left a gun, yes, I'm innocent." Love admitted that before trial he knew that the judge had the final decision on what the sentencing guideline range would be and that the court was not bound by the estimated guideline range in the proposed plea agreement. Love also admitted that he was told by the court that, even if everyone agrees that he was an armed career criminal, it is up to the court to decide. Love indicated that he did not believe what the court told him,

> because of prior stuff in the state, you know. Like I said, I know the binding thing with the state, and if I take a plea, it's between me –when I take a plea, it's between me and the state. The judge 85 percent of the time ruled in the –you know, they take the agreement.

Love admitted that he did not want Mr. Omar representing him at trial and agreed that he stood up during his

counsel's opening statement and said, "[i]neffective assistance of counsel. He's trying to get me more time than the government."

## II. ANALYSIS

"During plea negotiations defendants are entitled to the effective assistance of competent counsel." Lafler, 132 S. Ct. at 1384 (quotation marks omitted); see also Missouri v. Frye, 132 S. Ct. 1339, 1405 (2012) ("Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings . . . includ[ing] . . . the entry of a guilty plea." (citations and quotation marks omitted)). "[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Lafler, 132 S. Ct. at 1384 (quotation marks omitted).

### A. Performance Prong

"The performance prong of Strickland requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." Id. (quotation marks omitted). In its June 27, 2011 order, this court determined that Love's attorney's performance fell below this standard during the plea negotiation stage. While the court acknowledged that "an attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim," United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999) (quotation marks omitted), it also cited Seventh Circuit authority holding that "[a] defendant can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him," United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996). The court found that all the documents necessary to show that Love did not qualify for the ACCA sentencing enhancement were available to Love's attorney –and to the attorney for the government– at the plea negotiation stage, that Love's attorney's erroneous conclusion resulted in the miscalculation of a statutory sentencing minimum, not just a miscalculation of the sentencing guidelines range –which would ordinarily not amount to deficient performance– and that Love's attorney's determination that Love faced a 15-year minimum sentence rather that a 10-year maximum sentence was a "gross mischaracterization." Based on these circumstances, the court held that counsel did not make a good-faith effort to discover the facts relevant to the sentence, to analyze those facts in terms of the applicable legal principles, and to discuss that analysis with Love. Therefore, the court concluded that Love's attorney's performance at the plea negotiation stage of the proceedings was deficient.

The court invited the parties to address this issue further in their post-hearing briefs, but finds the government's argument against a finding of deficient performance unavailing. The government argues that Love has proved nothing more than counsel's "mere inaccurate prediction" of the potential guidelines range and such conduct does not amount to ineffective assistance of counsel. However, as explained above and in this court's June 27, 2011 order, counsel did more than miscalculate the applicable guideline range, which is generally not deficient performance. Rather, counsel misadvised Love as to the applicable statutory sentencing range, which is deficient performance. See Welch v. United States, 604 F.3d 408, 412 (7th Cir. 2010) (explaining that guidelines miscalculations are generally not cognizable under § 2255(a) because the guidelines are not "laws of the United States," but that allegations involving the ACCA sentencing enhancement above the otherwise applicable statutory maximum is cognizable under § 2255(a)). Consequently, the court persists in its finding of deficient performance.

### B. Prejudice

Having determined that counsel's performance at the plea negotiation stage of the proceedings was deficient, the court turns to the prejudice prong of the Strickland test. "[A] defendant has the right to effective assistance of counsel in considering whether to accept [a plea bargain]. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in . . . the imposition of a more severe sentence." Lafler, 132 S. Ct. at 1387. To establish prejudice in the context of a rejected plea bargain:

>  a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 1385.

Here, defendant contends that, but for the deficient performance of counsel, he would have been afforded the opportunity to enter into a non-ACCA plea agreement, he would have done so, and he would have received a lower sentence. Specifically, Love maintains that he would have been sentenced with an advisory sentencing guidelines range of 77 to 96 months, due to a reduction of three offense levels for acceptance of responsibility under U.S.S.G. § 3E1.1, rather than with an advisory guidelines range of 100 months to 125 months without the acceptance of responsibility reduction, which he ultimately faced after standing trial.

The government does not contend that, had it been alerted to the error during the plea negotiation stage, it would not have offered Love a non-ACCA plea agreement that contemplated a three-level reduction for acceptance of responsibility. Rather, the government advances two arguments in support of its position that Love has not shown that but for his attorney's error there is a reasonable probability that he would have pleaded guilty.[4] First, the government notes that Love was given the opportunity to plead guilty and the court admonished him that it would make an independent determination of the sentencing guidelines range despite what the plea agreement stated, and yet Love did not plead guilty. The government argues that Love's testimony makes clear that he ignored this admonishment and opted to go to trial based on his prior experience with plea agreements in state court and not because of any erroneous advice given to him by his attorney.

The government's argument is flawed because it conflates the cause of Love's hesitation to enter into the proposed plea agreement –his prior experience that judges ordinarily accept plea agreements as presented– with the cause of the error in the proposed plea agreement –the failure to recognize that Love did not qualify for ACCA-sentencing. Love's previous experience with plea bargaining in state court is what caused him to decide not to enter into the incorrect plea agreement. But it was counsel's deficient performance that caused the plea agreement to go uncorrected. Had Love's counsel done an adequate investigation he would have identified the government's error and the parties could have presented a plea agreement that correctly reflected that Love did not qualify for the ACCA sentencing enhancement. The court reiterates that the government has never taken the position that it would not have offered Love a non-ACCA plea agreement had its error been pointed out during the plea negotiation stage of the proceedings. In fact, as soon as the probation officer identified the error, the government agreed that Love did not qualify for the ACCA enhancement.

The government's first argument also suggests that Love should not have hesitated to enter into the proposed plea agreement that incorrectly stated that he was qualified for the ACCA enhancement because the court assured him that it would independently determine whether he qualified for the enhancement and that he would only receive the enhancement if he qualified, irrespective of what the plea agreement stated. Essentially, the government is arguing that the court's admonishment broke the causal chain between counsel's error and the prejudice Love suffered or, put another way, that it was Love's failure to accept the court's admonishment that caused him to go to trial, not counsel's deficient performance.

This argument is not illogical but its acceptance would eviscerate the Sixth Amendment right to effective assistance of counsel during plea negotiations which the Supreme Court just reaffirmed in Lafler and Frye. On April 17, 2008, every lawyer in the courtroom, including his own, unequivocally stated that Love qualified for the ACCA enhancement which yielded a 15-year minimum sentence instead of the 10-year maximum sentence without the enhancement. Under these circumstances, Love was asked to sign the proposed plea agreement in which the parties agreed that he "must be sentenced as an armed career criminal" and hope for the best even when

his own lawyer was incorrectly advising him that he qualified. At that point, Love had no reason to believe that his lawyer would re-examine the issue and discover the error. If the court's admonishment wiped out counsel's mistake during the plea bargain, Love effectively would have no right to counsel at that stage contrary to the holdings in Lafler and Frye. Moreover, while neither Lafler nor Frye addressed the possibility of a judicial admonishment breaking the causal chain between counsel's deficient performance and the resulting prejudice, the court is hard-pressed to hold that its admonishment in this case broke the causal chain when the Supreme Court held in Lafler that even a subsequent fair trial does not wipe clean any deficient performance. See id. at 1388; see also Frye, 132 S. Ct. at 1407 ("[I]t is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process."). Love had a Sixth Amendment right to counsel's sound advice and guidance with respect to the penalties he faced should he decide to plead guilty. He did not get it and that right cannot be satisfied with a judge's assurance that the plea agreement does not bind the court. It is worth noting that in its admonitions to defendant, the court did not specifically address the ACCA's 15-year minimum sentence.

Second, the government argues that Love's claim that he was prejudiced by his attorney's advice is refuted by his consistent denial of knowingly possessing the firearm as charged in the indictment. As a result, the government continues, even if Love had pleaded guilty he may have had his sentence enhanced for obstructing justice and may not have received a reduction for acceptance of responsibility. Therefore, the government concludes that due to the possibility that Love would have received the same sentence even if he had pleaded guilty, he cannot show that he was prejudiced by his attorney's erroneous advice. This argument is speculative and unsupported by the record. The record and evidence demonstrate that but for his attorney's deficient performance Love would have pleaded guilty pursuant to a plea agreement that did not contemplate the ACCA sentencing enhancement and which included a factual basis confirming his guilt. Love's protestations of innocence after he rejected the proposed plea agreement were not unexpected in light of the fact that he was proceeding to trial and, like the trial itself, were a byproduct of his attorney's deficient performance at the plea negotiation stage. Therefore, the fact that Love maintained his innocence after rejecting the proposed plea agreement does not indicate that he would have continued to do so after entering into a non-ACCA plea agreement.

In order to establish prejudice, Love is required to show a reasonable probability that a non-ACCA plea agreement would have been presented to the court, that the court would have accepted its terms, and that the sentence under the terms of that agreement would have been less severe than the sentence that was ultimately imposed after trial. See Lafler, 132 S. Ct. at 1385. The court finds that Love has done so.

### C. Remedy

Where, as here, the court has held an evidentiary hearing and has determined that defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea the court may exercise its discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between. Id. at 1389. The government has not addressed the issue of what constitutes an appropriate remedy should the court sustain Love's ineffective assistance of counsel claim. Love argues that he should receive the prison sentence that would have resulted from his acceptance of the proposed plea agreement. Love's conviction will remain intact and he will be resentenced as if he had pleaded guilty with the understanding that the ACCA enhancement does not apply. At the time of resentencing, the court will determine whether he qualifies for an acceptance of responsibility reduction.

### III. CONCLUSION

Based on the forgoing analysis, Love's § 2255 motion is granted and he will be resentenced.

1. Love raised an additional claim of ineffective assistance of counsel which this court denied on June 27, 2011.

2. Under the ACCA, a person who violates 18 U.S.C. § 922(g) and "has three previous convictions . . . for a violent felony or a serious drug offense" is subject to a 15-year minimum prison sentence. 18 U.S.C. § 924(e)(1).

3. Interestingly, however, this argument was not based on the fact that the maximum term of imprisonment in 97 CF 2337 was less than 10 years but, rather, based on a typographical error in the certificate of conviction for that case which indicated the conviction was for misdemeanor steroid possession.

4. In its initial response to Love's motion, the government also argued that this court should not accept Love's assertion that he would have pleaded guilty to a non-ACCA plea agreement because he did so in an attempt to gain more time to obtain new counsel, and that his assertion was not probable in view of his continued insistence that he was innocent. However, the government did not advance these arguments in its post-hearing brief or incorporate them by reference. Thus, the court assumes that the government has abandoned these arguments. Even if it has not, the court now rejects the arguments for the reasons stated in its June 27, 2011 order.